488 A.2d 162

**LAKE LINGANORE ASSOCIATION, INC.**

v.

**James JURGENS and Sandra Jurgens.**

**No. 96, Sept. Term, 1984.**

Court of Appeals of Maryland.

Feb. 22, 1985.

Lucien T. Winegar, Frederick, for appellant.

No brief filed by appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We shall hold in this case that a suit by a lot owners' association to recover assessments from a landowner in a subdivision is not a case where the District Court is required "to decide the ownership of real property or of an interest in real property." Hence, such an action may be maintained in the District Court.

Appellees, James Jurgens and Sandra Jurgens, own a lot in a subdivision in Frederick County known as Lake Linganore. Appellant, Lake Linganore Association, Inc., is an association of lot owners. It brought suit in the District Court in Frederick County against the Jurgens to recover assessments allegedly due the association under covenants in the Jurgens' chain of title. Judgment was entered in favor of the association.

The Jurgens appealed to the Circuit Court for Frederick County. They filed a brief in that court in which they made four contentions: (1) that they were not liable for any assessments since the record discloses no covenants applicable to their lot, (2) that even as to lots subject to the covenants, the increase over the basic annual assessment of $60 terminated with the year 1979, (3) that even if the Jurgens' lots were subject to the covenants, all assessments due and payable before November 9, 1980, would be barred by limitations, and (4) that the District Court had no jurisdiction of the subject matter of the case. As to this latter contention they said, "The only issues in this case are Defendants' ownership of real property and the precise nature and incidents of their title." They relied for this contention upon Maryland Code (1974) § 4–402, Courts and Judicial Proceedings Article, which states in pertinent part:

"(b) *Land title cases.*—The District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property."

They did not elaborate other than to quote the statute and say that the contention was one which could be raised at any time. The circuit court judge held:

"As this is clearly a case involving the appellants' ownership of real property and the precise nature and incidents of their title, it is one which is entirely outside the jurisdiction of the District Court, Section 4–402(b) . . . ."

The association petitioned us for a writ of certiorari which we issued that we might address this important public issue.

The Revisor's Note to § 4–402 advises that "[s]ubsections (a) and (b) are new language derived from Article 26, § 145(c)(4) (which are proposed for repeal)." Prior to its repeal, Code (1957, 1973 Repl.Vol.) Art. 26, § 145(c)(4) read, "The District Court shall have no equity jurisdiction, nor shall it have jurisdiction to try title to real property." The provision relative to real property was derived from Code

(1957) Art. 52, §§ 8 and 9. The former stated that "no justice of the peace shall have any jurisdiction in actions where the title to land is involved ...," unchanged since its enactment as a part of the Code of 1888. It in turn had its origins with Ch. 138, § 6, of the Acts of 1824, pertaining to actions of trespass *quare clausum fregit*, to the effect that "if any person against whom a complaint [was] made under [that] act before a justice of the peace, sh[ould] appear on the return day of the warrant, and allege that he [was] entitled to the property on which the trespass [was] charged to have been committed, or that he acted under a person (named by him) claiming title to the same, and sh[ould] verify an allegation by oath or affirmation, the justice before whom the complaint aforesaid m[ight] be made, sh[ould] take no further cognizance of the same." Section 9, originally enacted as Chapter 162, §§ 1 and 5, of the Acts of 1813, was likewise unchanged since its enactment as a part of the 1888 Code. It provided:

> "If the defendant in an action before a justice of the peace for cutting, destroying or carrying away timber or wood to or from any land in this State or for doing any other injury to such lands shall allege in writing that he claims title to said lands or that he acted under a person claiming title to the same, whom he shall name in such allegation, and shall verify said allegation by oath, the justice shall take no further cognizance of the case."

We are handicapped in this case from the standpoint of presentation of any argument to support the action of the circuit court judge by the fact that the appellees have not seen fit to brief and argue their position. We have nothing before us other than their brief in the circuit court. It will be noted that their contention to the circuit court was simply that there should be a ruling in their favor because "[t]he only issues in this case are Defendants' ownership of real property and the precise nature and incidents of their title." Under our prior holdings pertaining to the earlier statutes such an argument simply is not grounds for a

holding that the District Court was without jurisdiction to entertain the association's complaint.

1 G. Liebmann, *Maryland Practice, District Court Law and Practice* § 100 (1976) states:

"Although the terminology utilized in Section 4–402(b) is somewhat different from the prior statute, the earlier cases would appear to remain relevant. They establish that, to defeat the jurisdiction of the court of limited jurisdiction, the nature of the action itself must be such as to place title to land 'necessarily and directly in issue'. A mere allegation to this effect by a defendant is not sufficient. Actions for rent have been held not to place the title to land 'necessarily and directly in issue,' and accordingly have been held to be within the jurisdiction of the courts of limited jurisdiction.

"The jurisdiction of justices of the peace in summary eviction cases cannot be ousted by a simple denial of the tenancy and allegation of title to the premises, since the question is not one of title but whether defendant entered into a demise. Similarly, an action for replevin for timber logs involves personal property and is in consequence within the jurisdiction of a court of limited jurisdiction. Likewise, an action founded upon improper and negligent construction and operation of trains near a plaintiff's residence is not a case in which title to land is necessarily and directly in issue." *Id.* at 192.

Liebmann cites *Baltimore & O.R.R. v. Owens*, 130 Md. 678, 101 A. 605 (1917). In that case a landowner recovered a judgment against a railroad before a justice of the peace in Prince George's County. The action was based on the noise and soot emanating from the operation of trains on a nearby track. The Court said in response to a contention that the justice of the peace was without jurisdiction to try the cause by virtue of his having no jurisdiction in actions where the title to land was involved:

"There is nothing on the face of the proceedings properly before us or from the nature of the action itself that

shows that it is a suit in which the title to land is necessarily and directly in issue between the parties. The nature of the injury complained of and the suit itself was to recover damages, for an injury to the plaintiff's possession merely and the title to the land was not directly and necessarily involved, so as to defeat and oust the jurisdiction of the justice of the peace or of the Circuit Court." 130 Md. at 681–82, 101 A. at 606.

A. Thomas, *Procedure in Justice Cases* § 44 (1906) states:

"A statement by the defendant that the title to land is involved is not conclusive, and cannot govern or control the action of the court or determine its jurisdiction. It must appear to the court from the nature of the action itself that it is one in which the title to land is necessarily and directly in issue. A suit for rent is not such a suit." *Id.* at 41.

In *Whittington v. Hall,* 116 Md. 467, 82 A. 163 (1911), an individual sold all the timber on a piece of land in Somerset County and gave the purchaser five years in which to cut and remove it. He sold the land before the expiration of the five years. The purchaser of the land cut and removed a portion of the timber. The purchaser of the timber brought suit before a justice of the peace against the purchaser of the land for the value of the timber so cut. The purchaser of the land appeared and filed an affidavit that title to land was involved and moved to quash the proceeding for the reason that the magistrate was without jurisdiction to hear the case. The Court set forth the relevant statute, most recently codified as Code (1957) Art. 52, § 9, which we have quoted. The Court said:

"If this is to be construed to mean that in any action before a magistrate for cutting, destroying or carrying away timber or wood, the defendant has it in his power to oust the jurisdiction of the justice by simply making an allegation supported by his oath that he claims title to the land, and that the magistrate or Circuit Court on appeal is shorn of all right to inquire into the real cause of action,

and ascertain whether a question of title to the land is necessarily or directly in issue, there will be no adequate remedy in a large number of cases for petty depredations, and a defendant can virtually shelter himself from responsibility for many illegal acts, so long as the value of the wood or timber cut, destroyed or carried away not exceed a certain value. It was certainly never the intent of the legislature to afford so easy a loophole for the petty depredator.

"In construing section 7 of Article 52 this Court said in *Randall v. Sutton,* 43 Md. 64, that a 'statement of a defendant that title to land was involved is not necessarily conclusive but that it must appear to the Court from the nature of the action itself that it is one in which the title to land is necessarily and directly in issue.'

"While the phraseology of the two sections differs somewhat, the construction already given to section 7 is so eminently the reasonable one that it is proper to extend it to section 8 as well, particularly when the construction contended for by the appellant would lead to the result already indicated.

"The correctness of this view may be tested in another way. The cause of action on which this suit was brought reads as follows: 'To 2027 feet timber at $1.00 per 100 feet—$20.27.' This does not on its face disclose that there was any question affecting the title to land. It is in effect an action in assumpsit for the value of certain timber." 116 Md. at 469–70, 82 A. at 164.

The suit here said, "Defendants own property at Lake Linganore and are therefore members of the Lake Linganore Association, Inc. Such membership requires Defendants to pay annual dues. The dues remain unpaid after proper demand." The trial court here was not called upon "to decide the ownership of real property or [to decide the ownership] of an interest in real property" any more than the suit in *Randle v. Sutton,* 43 Md. 64 (1875), to recover for rent was one "where the title to land [was] involved." The claim there, as filed before the justice of the peace was

"for ground-rent for loading iron-ore on sideling at 50 cents per car," stating, as the Court put it, "the dates and the numbers of the cars." Samuel Sutton was the plaintiff. The Court said:

> "In the Circuit Court on the appeal, the defendant filed the following paper.
>
> " 'The defendant and appellant alleges that the title to land is involved in this cause, that the said Samuel Sutton, if he ever had any title to the land upon which rent is alleged to have accrued in this case, has been disseized by the President and Directors of the Baltimore and Ohio Railroad Company many years ago, that a part of said land is the bed of an old county road, as the defendant is informed, and the major part thereof has been occupied by the said Baltimore and Ohio Railroad Company, as part and parcel of the depot franchises of said road.' This paper was signed by counsel and sworn to by the defendant.
>
> "It is contended that this affidavit is sufficient to show that the case was not one within the jurisdiction of the justice of the peace and consequently the Circuit Court was without jurisdiction to pronounce the judgment of affirmance on the appeal; because it appears from the affidavit that the title to lands is involved . . . ." 43 Md. at 67–68.

Chief Judge Bartol responded for the Court to this contention:

> "Such a suit is not one in which title to land is 'necessarily and directly in issue;' but in its nature depends exclusively upon contract between the parties; and is based upon the relation of landlord and tenant, in order to maintain the suit such relation must be shown to exist between the parties either under an express contract of lease, for a stipulated rent, or under a permissive holding, where the claim is for use and occupation." 43 Md. at 69.

As *Randle* did not call upon the justice of the peace to determine title to lands so in the case at bar the District Court was not required "to decide the ownership of real

property or [to decide the ownership] of an interest in real property." It follows, therefore, that the District Court properly entertained this action and the circuit court judge erred.

JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.